**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSE AYUSO,**

                                **Plaintiff,**                      **6:05-cv-0163**
                                                               **(GLS/DRH)**

                        **v.**

**JOSEPH AMEROSA, C. ALLEN**
**PYLMAN, TIM JULIAN, MICHAEL**
**ARCURI and THE CITY OF UTICA,**

                               **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**FOR THE PLAINTIFF:**

JOSE AYUSO
Plaintiff, *Pro Se*
P.O. Box 2001
04-B-1851
Upstate Correctional Facility
Malone, New York 12953

**FOR THE DEFENDANTS:**

CITY OF UTICA                            JOHN P. ORILIO, ESQ.
CORPORATION COUNSEL
One Kennedy Plaza
Utica, New York 13502

GORMAN, WASZKIEWICZ LAW FIRM     BARTLE J. GORMAN, ESQ.
1508 Genesee Street
Utica, New York 13502

**Gary L. Sharpe**
**U.S. District Judge**

# MEMORANDUM-DECISION AND ORDER
## I. Introduction

Plaintiff *pro se* Jose Ayuso brings this action pursuant to 42 U.S.C. § 1983 against various municipal defendants alleging, *inter alia*, excessive force in violation of his Fourth Amendment rights. *See dkt. 7.* Defendant Arcuri has filed a motion for summary judgment, *see dkt. 48,* as have defendants Amerosa, Pylman, Julian, and the City of Utica (the "City Defendants"). *See dkt. 50.*[1] For the reasons that follow, defendant Arcuri's motion is granted, and the City Defendants' motion is granted in part and denied in part.

## II. Facts

On October 27, 2003, defendant Amerosa, a Utica police officer, attempted to stop Ayuso for a traffic violation. Ayuso, after initially pulling to the side of the road, subsequently sped away in his vehicle, and Amerosa gave chase. During the course of the chase, Ayuso's car struck a

---

[1] Ayuso has also submitted a document purporting to be a "Motion for Summary Judgment." *See dkt. 58.* However, in light of the arguments made therein, the court interprets this as an opposition to the defendants' motions for summary judgment. *See id. at p. 4* (arguing that genuine issues of material fact are in dispute, and requesting that the court "proceed to trial where the Jury . . . can ascertain the material facts of this action").

2

house, at which point Ayuso took off on foot. Officer Amerosa, by now also on foot, overtook Ayuso, and attempted to place him under arrest.

It is at this point that the parties' accounts of the facts diverge. According to Amerosa, Ayuso resisted arrest and began to punch him. *See City Defs.' Statement of Material Facts ("City Defs.' SMF") ¶ 22; dkt. 50.* Amerosa responded by striking Ayuso in the legs with his baton. *Id.* Upon being struck, Ayuso drew a gun and struck Amerosa across the left side of his face, cursed at Amerosa, and pushed the gun into his neck. *Id. at ¶¶ 22-23.* Amerosa backed off and saw Ayuso pointing the gun at him. *Id. at ¶ 23.* Anticipating that Ayuso would shoot him, Amerosa drew his service weapon and shot at Ayuso. *Id. at ¶ 23.* After being shot, Ayuso threw his gun down on the pavement. *Id. at ¶ 24.*

Ayuso's version of the facts differs in many respects from Amerosa's account. Ayuso does not deny resisting arrest by Amerosa. *See Pl.'s Statement of Material Facts ("Pl.'s SMF") ¶ 1; dkt. 58.* However, he claims that Amerosa maliciously attacked him, and he defended himself by fighting back. *Id. at ¶ 6.* Ayuso also does not deny possession of a gun, but states that the weapon was unloaded throughout the altercation. *Id. at ¶ 4.* Moreover, Ayuso claims that during the fracas, the gun and magazine

3

clip fell from his pants' pocket, at which time he kicked it away as he attempted to flee from Amerosa. *Id. at ¶ 10.* While Ayuso admits to striking Amerosa in the face during their struggle, he denies: (1) striking him with the gun, (2) pressing the gun into his neck, and (3) pointing the gun at Amerosa before Amerosa shot him. *Id. at ¶¶ 6, 8-10.* He also claims that Amerosa struck him in the head with his police baton, resulting in two cuts. *Id. at ¶ 7.* Lastly, Ayuso claims that as he was running away, Amerosa shot him twice in the back, and one bullet became lodged in his chest. *Id. at ¶¶ 10, 12.*

On the evidence presented, the court is unable to credit one account over the other. Contrary to the parties' contentions, Ayuso's medical records do not definitively reveal whether Ayuso was shot in the front or the back of his body. Indeed, the records suggest that Ayuso was shot in the side of the chest. *See Ayuso Medical Records, p. 5; dkt. 50.* A wound to the side could be consistent with both an aggressive posture, or with flight. Additionally, while the defendants assert that the presence of blood on the handle of Ayuso's weapon indicates that it was in his hand at the time he was shot, Ayuso counters that the blood came from a head wound inflicted by Amerosa's baton prior to the shooting. In light of these disputed issues

4

of fact, the court will assume, for purposes of the pending motions, that Ayuso was shot while running away from Amerosa, and that Ayuso had discarded his gun prior to being shot by Amerosa.

Following his arrest, Ayuso subsequently pled guilty to criminal possession of a weapon in the second degree, N.Y. PENAL LAW § 265.03, and assault in the second degree, N.Y. PENAL LAW § 120.05. No criminal action was taken against Officer Amerosa.

### III. Discussion

While Ayuso's First Amended Complaint purports to assert violations of his rights under the First, Eighth, and Fourteenth Amendments, the precise nature of the constitutional violations is not explicated with a great deal of clarity. In light of Ayuso's *pro se* status, the court has construed the First Amended Complaint liberally as stating the following claims: (1) an excessive force claim under Fourth Amendment; (2) a Fourteenth Amendment due process claim; (3) a Fourteenth Amendment equal protection claim; and (4) a conspiracy claim under 42 U.S.C. § 1985.[2]

### A.   Standard of Review–Motion for Summary Judgment

---

[2]There is no basis for any claims under the First and Eighth Amendment. Accordingly, to the extent that Ayuso raises such claims, they are dismissed.

The standard for the grant of summary judgment is well-established, and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle,* 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

**B.    Fourth Amendment Excessive Force**

Ayuso's claim for excessive force arises under the Fourth Amendment of the Constitution. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The claim is stated directly against Officer Amerosa, who applied the force, and derivatively against Arcuri and the remaining City Defendants for failure to supervise and train.

Turning first to Arcuri, there is no evidence, beyond Ayuso's bald allegations, that Arcuri, as District Attorney, had any role in the training or supervising of Oneida County police officers. Arcuri has submitted an affidavit stating that he had "no supervisory authority over Officer Amerosa," and that he had "no role in training Officer Amerosa." *Aff. of Michael Arcuri,* ¶ *10; Dkt. 48.* Ayuso has offered no evidence to contradict Arcuri's affidavit.[3] Accordingly, the Fourth Amendment excessive force claim is

---

[3] Ayuso's Statement of Material Facts, submitted pursuant to N.D.N.Y. R. 7.1(a)(3), states that Arcuri "does have judicial authority over Officer Amerosa." *Dkt. 58.* However, Ayuso provides no factual support for this assertion. It is well settled that on a motion for summary judgment, "[t]he non-moving party may not rely on mere conclusory allegations nor

6

dismissed as to Arcuri.

With respect to Officer Amerosa, he maintains that the force used against Ayuso was reasonable under the circumstances. In evaluating an excessive force claim, "the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 123 (2d Cir. 2004) (citation omitted). "A Fourth Amendment inquiry is an objective test, which requires examining the severity of the crime at issue, the immediate threat the suspect poses to the officers and others, and whether the suspect is actively resisting arrest or attempting to flee." *Brown v. City of New York*, 98-CV-5354, 2001 WL 477279, at *6 (E.D.N.Y. Feb. 15, 2001). Moreover, "[w]ith respect to deadly force in particular, an officer's decision to use deadly force is objectively reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005) (quotations and citation omitted).

---

speculation, but instead must offer some *hard evidence* showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998) (emphasis added).

7

At this juncture, Amerosa cannot show that the force used against Ayuso was reasonable as a matter of law. If Ayuso was indeed shot while he was fleeing, and after having discarded his weapon, a jury might determine that the use of force was not objectively reasonable. Accordingly, the City Defendants' motion to dismiss the Fourth Amendment excessive force claim against Officer Amerosa is denied.[4]

A different result obtains with respect to the remaining City Defendants (Pylman, Julian, and the City of Utica). These defendants are not alleged to have participated in the use of excessive force against Ayuso. Rather, Pylman, Julian, and the City of Utica are said to be responsible for the use of excessive force due to the failure of Pylman and Julian to supervise and/or train Amerosa. There is no doubt that, in appropriate circumstances, a municipality may be liable for the use of excessive force by its employees. *See generally Amnesty America v. Town of West Hartford,* 361 F.3d 113, 124-131 (2d Cir. 2004). Specifically, a municipality (or a supervisory official) may be liable for failure to train or supervise "where the failure to train amounts to deliberate indifference to the rights of those with whom

---

[4] Moreover, Amerosa is not entitled to qualified immunity at this stage of the proceedings. *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

8

municipal employees will come into contact." *Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir. 1992) (quotation and citation omitted). Of particular relevance to this case, the Supreme Court has noted that "the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be 'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *City of Canton v. Harris,* 489 U.S. 378, 390 n. 10 (1989) (citation omitted). Be that as it may, in this case Ayuso has made no evidentiary showing regarding the nature of the City of Utica's police training programs and the nature of the supervision to which Amerosa was subjected. *See Amnesty America,* 361 F.3d at 130 (affirming grant of summary judgment where plaintiffs "have proffered no evidence of the Town's training programs or advanced any theory as to how a training deficiency caused the police officers to use excessive force"). At the summary judgment stage, Ayuso cannot rely upon the bare allegations of his complaint, and his failure to put forth any evidence is fatal to his claim. *See Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir. 1995) (noting that "the plaintiff cannot meet [his] burden through reliance on unsupported assertions"). Accordingly, the Fourth Amendment excessive force claims against Pylman,

Julian, and the City of Utica are dismissed.

**C.    Due Process Claims**

To the extent that Ayuso alleges that Amerosa's use of force violated his right to substantive due process, such claim is dismissed. Excessive force claims are to be analyzed under the Fourth Amendment, not the due process clause. *See Graham v. Connor,* 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach") (emphasis in original).

Ayuso's First Amended Complaint may also be read as asserting a due process claim against Arcuri, Pylman, and Julian arising out of the falsification of official reports. However, any such claim is barred by the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994), in which it was stated that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

10

> invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Id.* at 486-87; *see Nicholson v. Lenczewski,* 356 F. Supp. 2d 157, 165 (D. Conn. 2005) (applying *Heck v. Humphrey* to bar a due process claim against a police officer who included false statements and false information in his report to the prosecutor).

Finally, to the extent that Ayuso asserts that the falsification of records amounted to an illegal "cover up" of Amerosa's actions, Ayuso lacks standing. Ayuso claims that Arcuri, Pylman, and Julian "helped falsify official reports to cover up defendant Amerosa's action" and "to avoid charging defendant Amerosa with shooting plaintiff in the back." *First Amended Complaint, ¶¶ 25, 26; dkt. 7.* But Ayuso has no judicially cognizable interest in the prosecution or discipline of Amerosa. *See Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) (holding that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

In sum, to the extent that Ayuso asserts any claims, whether under

11

the due process clause or otherwise,[5] against the defendants arising out of the falsification of records, such claims are dismissed.

## D.     Equal Protection Claim

The defendants seek dismissal of Ayuso's equal protection claim on the grounds that Ayuso has not produced evidence demonstrating: (1) that he, as compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race.  *See Higgins v. City of Johnstown,* 20 F. Supp. 2d 422, 428 (N.D.N.Y. 1998).  The court concurs.  Ayuso's First Amended Complaint asserts that "Amerosa used racially-motivated profiling to illegally stop, assault, shoot and critically wound the unarmed plaintiff."  *First Amended Complaint, ¶ 6; dkt. 7.*  However, Ayuso has come forward with no evidence whatsoever to support the claim of racial profiling. *See Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir. 2007) (summary judgment on equal protection claim appropriate where claim was "not based on evidence that gives rise to a genuine issue of material fact but rather on 'sheer conjecture and speculation . . .'") (citation omitted).

---

[5]Ayuso has not classified his "falsification of records" claim as a "due process claim," and it is not necessary for the court to ascertain the precise label that ought to be applied.

Accordingly, Ayuso's equal protection claim is dismissed.

### E. Conspiracy Claim

In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege the existence of a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," *and* an act in furtherance of the conspiracy "whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Britt v. Garcia,* 457 F.3d 264, 270 n. 4 (2d Cir. 2006) (citations omitted).  Ayuso has alleged the existence of a conspiracy in general terms, *see First Amended Complaint ¶ 43; dkt. 7,* but has offered no evidence in support of his allegations.  The vague allegations in Ayuso's First Amended Complaint, without more, are insufficient to withstand a motion for summary judgment.  *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977) (holding that "complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed") (citations omitted).  Accordingly, Ayuso's conspiracy claim is dismissed.

### F. Discovery Issues

13

In the same mailing which contained Ayuso's opposition to the defendants' motions for summary judgment, Ayuso enclosed certain deposition notices. The Uniform Pretrial Scheduling Order in this case provides that discovery was to have been completed by October 1, 2006. *Dkt. 20.* The discovery deadline having passed, Ayuso has no further right to take depositions or conduct any further discovery in this case.[6]

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendant Arcuri's motion for summary judgment (Dkt. No. 48) is GRANTED, and all claims against Arcuri are dismissed; and it is further

**ORDERED** that the City Defendants' motion for summary judgment (Dkt. No. 50) is GRANTED as to all claims against Pylman, Julian, and the City of Utica; and it is further

**ORDERED** that the City Defendants' motion for summary judgment (Dkt. No. 50) is GRANTED as to all claims against Amerosa with the exception of the Fourth Amendment excessive force claim against Amerosa, and as to that claim, the motion is DENIED; and it is further

---

[6]Arcuri's reply memorandum of law in support of his motion for summary judgment notes that Ayuso has also moved for attorneys' fees pursuant to 42 U.S.C. § 1988. *See dkt. 70, p. 6.* However, the court is not aware of any such pending motion, and thus the court will not address Arcuri's request to deny the motion.

14

**ORDERED** that defendants may disregard Ayuso's deposition notices, and that no further discovery will be permitted without order of the court; and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Order to the parties by regular mail.

**IT IS SO ORDERED.**

Dated: January 11, 2008
Albany, New York

Gary L. Sharpe
U.S. District Judge